**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a0742n.06

**No. 10-2685**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| EFRAIM GARCIA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | **Aug 09, 2013** |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CARMEN PALMER, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:  BATCHELDER, Chief Judge,  KEITH, and MARTIN, Circuit Judges.

**BOYCE F. MARTIN, JR., Circuit Judge.**  Efraim Garcia, a Michigan prisoner convicted of two counts of first-degree murder, one count of assault with intent to commit murder, and one count of possession of a firearm while committing a felony, appeals the district court's dismissal of his habeas corpus petition filed pursuant to 28 U.S.C. § 2254.  Although the district court denied Garcia's petition, it granted a Certificate of Appealability with respect to Garcia's claim that his trial counsel was ineffective for failing to investigate or review the work product of an investigator from a related federal case.  This Court granted Garcia's Motion to Expand the Certificate of Appealability to include Garcia's claim that his trial counsel was ineffective for failing to use transcripts of a witness's prior testimony for impeachment.  For the following reasons, the judgment of the district court is AFFIRMED.

I.

Garcia's convictions arise from a gang-related shooting, known as the "Rutland Street shooting," that took place in a residential neighborhood in Detroit during the early morning hours of July 17, 1994. The Michigan Court of Appeals set forth the underlying facts of the shooting, and this Court presumes that those facts are correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2554(e)(1)).

The Detroit Police Department began investigating the Rutland Street shooting in 1994, and the Federal Bureau of Investigation took over the investigation in 1997. Later that year, federal prosecutors brought charges under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968 (1970), in federal district court against several members of the Cash Flow Posse gang, including Garcia, Jerry Waucaush, Gregory Ballesteros, and Marty Rodriguez. During the pendency of the federal case, the court appointed private investigator Julianne Cuneo to assist Garcia with his defense. Cuneo dedicated approximately one hundred hours to the investigation of the Rutland Street shooting, during which time she obtained copies of FBI reports and the Detroit Police Department's homicide file, questioned several witnesses, and took photographs. Waucaush, Ballesteros, and Rodriguez pleaded guilty to certain charges and agreed to testify against Garcia at trial for a reduced sentence. The federal case never went to trial because the federal charges against Garcia, the sole remaining defendant, were dismissed on jurisdictional grounds in 2000 and Waucaush, Ballesteros, and Rodriguez withdrew their pleas.

In 2001, the State of Michigan brought charges against Garcia, Waucaush, and Ballesteros for the Rutland Street shooting. Upon learning that attorney Frederick Moore had been appointed to represent Garcia in the state case, Cuneo called Moore. During the initial call, Cuneo offered Moore her assistance and access to her file free of charge, although there is no indication that she made Moore aware of the amount of time that she spent on the investigation or of the contents of her file. Moore told Cuneo that her assistance would be valuable and that Garcia encouraged him to talk with her. Nonetheless, he never met with her.

## II.

During the trial, the prosecution presented an overwhelming amount of evidence implicating Garcia in the Rutland Street shooting. Just as they had done in the federal case, Garcia's co-defendants Waucaush and Ballesteros pleaded guilty to certain charges in the state case. They agreed to testify against Garcia at trial and received reduced sentences for their cooperation. Before Waucaush and Ballesteros testified, the prosecution called several witnesses who provided testimony detrimental to Garcia's defense by linking Garcia directly to the Rutland Street shooting or to the guns used in the shooting. The witnesses included members of the Cash Flow Posse, cooperating witnesses, victim Shirley Johnson, and law enforcement officers.

On August 27, 2002, the jury found Garcia guilty of two counts of first-degree murder, one count of assault with intent to commit murder, and one count of possession of a firearm while committing a felony. Garcia received concurrent terms of life imprisonment without the possibility of parole for the murder convictions, a concurrent term of twenty to forty years imprisonment for the

assault conviction, and a consecutive term of two years imprisonment for the felony firearm conviction.

On direct appeal from his convictions in the Wayne County Circuit Court, Garcia asserted that trial counsel was ineffective for "refusing to meet with an investigator that had previously been appointed by the federal court, or review information gathered by the investigator." *People v. Garcia*, No. 246154, 2004 WL 1620844, at *4 (Mich. Ct. App. July 20, 2004). The Michigan Court of Appeals affirmed Garcia's convictions, *id.*, and the Michigan Supreme Court denied Garcia's application for leave to appeal. *People v. Garcia*, 472 Mich. 868 (2005).

Subsequently, Garcia filed a motion for relief from judgment in which he raised a host of new claims, including a claim that his trial counsel was ineffective for failing to impeach Marty Rodriguez, but the Wayne County Circuit Court denied the motion on procedural grounds. In particular, the Circuit Court dismissed the claims under Mich. Comp. Laws § 6.508(D)(3) because Garcia "failed to show good cause for failure to raise the new issues on appeal, and actual prejudice for the alleged irregularities that support the claim for relief." *People v. Garcia*, No. 01011952-03 (Wayne Cnty. Cir. Ct. April 28, 2006). The Michigan Court of Appeals denied Garcia's application for leave to appeal, as did the Michigan Supreme Court, with both courts citing section 6.508(D). *People v. Garcia*, No. 270439 (Mich. Ct. App. Nov. 28, 2006) (unpublished); *People v. Garcia*, 477 Mich. 1112 (2007).

Garcia filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 in the Eastern District of Michigan in 2007. In denying Garcia's petition, the district court held that Garcia had not been

prejudiced by trial counsel's failure to review the investigator's work product and it dismissed Garcia's remaining claims on procedural grounds. The district court granted a Certificate of Appealability as to the original ineffective assistance claim, and this Court granted Garcia's motion to expand the Certificate to include his claim that trial counsel had been ineffective for failing to impeach Marty Rodriguez.

### III.

This Court reviews a district court's denial of a writ of habeas corpus de novo. *Dando v. Yukins*, 461 F.3d 791, 795 (6th Cir. 2006) (citing *Wolfe v. Brigano*, 232 F.3d 499, 501 (6th Cir. 2000)).

Under the Antiterrorism and Effective Death Penalty Act, a writ of habeas corpus may be granted "with respect to any claim that was adjudicated on the merits in State court" if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law "if the state court arrived at a conclusion 'opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Wolfe*, 232 F.3d at 501 (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law is where "'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 407). "In order for

a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citations omitted).

IV.

Garcia claims that he received ineffective assistance of counsel because his attorney, Frederick Moore, failed to investigate Julianne Cuneo's work product.

Under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to establish an ineffective assistance of counsel claim, Garcia "must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111 (2009). "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," taking into consideration "all the circumstances." *Strickland*, 466 U.S. at 690.

The Michigan Court of Appeals determined that Garcia had not established deficient performance on the part of Moore. Specifically, the Michigan Court of Appeals held the following:

> We are not persuaded that the affidavit from the private investigator establishes that defense counsel was ineffective. At best, it only establishes that defense counsel refused to meet with her. The record discloses that much of the information the investigator mentions in her affidavit was available to defense counsel, including the FBI's "302s" and the FBI's copy of the Detroit Police Department's file. Although the investigator also conducted interviews and background investigations, it is not apparent from the record that defense counsel did not conduct his own investigation into these same areas. Therefore, we cannot conclude that defense counsel was ineffective for failing to take advantage of the investigator's services.

*People v. Garcia*, 2004 WL 1620844, at \*4. In light of the state court's merits-based decision regarding the performance prong of Garcia's ineffective assistance claim, deferential review under section 2254(d) applies and we may grant Garcia's habeas petition only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[1]

To establish deficient performance under *Strickland*, the petitioner "must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 688). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* (quoting *Strickland*, 466 U.S. at 689). Petitioner bears the burden of showing that counsel made errors "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Id.* (internal

---

[1] The district court applied de novo review to this claim because it allowed Garcia to depose Moore, and in *Brown v. Smith*, 551 F.3d 424, 429 (6th Cir. 2008), we held that the deferential review mandated under section 2254(d) does not apply where "new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court." However, since the district court issued its opinion, the Supreme Court decided *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011), in which it held that "[i]f a claim has been adjudicated on the merits by a state Court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state Court." *Pinholster*, 131 S. Ct. at 1400. Because *Pinholster* limits our review to the record before the state court such that we cannot consider Moore's deposition, we will apply section 2254(d)'s deferential standard of review. *See McCoy v. Jones*, 463 F.App'x 541, 545 (6th Cir. 2012) (calling into question the continued validity of *Brown* in light of *Pinholster*); *Johnson v. Sherry*, 465 F.App'x 477, 478–79 (6th Cir. 2012) (we held that, under *Pinholster*, we could not consider new evidence resulting from an evidentiary hearing at the district court in spite of the fact that we had remanded the case to the district court for the purpose of conducting the evidentiary hearing, and applied deferential review under section 2254(d)).

quotation marks omitted). The Supreme Court has provided courts with guidance for assessing

ineffective-assistance claims based upon an allegation that counsel failed to investigate:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland*, 466 U.S. at 690–91. "The focus in failure-to-investigate claims, then, is the

reasonableness of the investigation (or lack thereof)." *English v. Romanowski*, 602 F.3d 714, 726

(6th Cir. 2010) (citing *Wiggins*, 539 U.S. at 527).

"Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 130 S.Ct.

1473, 1485 (2010), but "[e]stablishing that a state court's application of *Strickland* was unreasonable

under § 2254(d) is all the more difficult." *Richter*, 131 S.Ct. at 788. The standards under both

*Strickland* and § 2254(d) are "highly deferential," *id*. (citations omitted), and when courts apply the

two in tandem, the resulting standard is "doubly" deferential. *Id*. (citing *Knowles*, 129 S.Ct. at

1420). "[T]he question is not whether counsel's actions were reasonable. The question is whether

there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Applying the requisite double deference, we uphold the state court's finding that Moore's

performance was not deficient. Although Moore's decision to forego the investigation of Cuneo's

file was not advisable, it does not fall outside of the wide range of reasonable professional assistance.

Cuneo does not claim that, during any of her interactions with Moore, she made Moore aware of the

fact that she spent approximately one hundred hours on the case or of the contents of her file. It is clear that, at some point after Moore's initial call with Cuneo, he decided that he no longer considered her assistance valuable, and as the Supreme Court has noted, "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id*. Moore had a better sense of his needs than this Court could possibly have at this stage of the litigation, and as his own investigation progressed, it was his sense that Cuneo's assistance and file were unnecessary. It could have also been his sense that, at a certain point in his investigation, meeting with Cuneo and reviewing her file would have been a distraction from more important duties relating to Garcia's case. *See id*. at 789 ("An attorney can avoid activities that appear 'distractive from more important duties.'" (quoting *Strickland*, 466 U.S. at 689)). There is more than one reasonable argument that Moore reasonably determined the investigation was unnecessary, and as a result, we find that the state court's determination that Moore provided Garcia with adequate representation was not contrary to, or an unreasonable application of, clearly established federal law.

V.

Garcia claims that his attorney's failure to impeach Marty Rodriguez at trial constitutes ineffective assistance of counsel. In particular, Garcia argues that his attorney should have impeached Rodriguez with evidence that Rodriguez was a defendant in the federal case and that the federal government gave him a plea deal in exchange for his inculpatory statements about Garcia.

Before addressing the merits of this claim, we must determine if the claim is properly before us or if Garcia procedurally defaulted the claim. Although the government did not raise the issue of procedural default on appeal, we may raise it sua sponte. *Hodges v. Colson*, 711 F.3d 589, 601 n.2 (6th Cir. 2013) (citing *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000)).

The state court did not consider this claim on the merits, but instead dismissed it on state procedural grounds. In particular, the Wayne County Circuit Court dismissed the claim under Mich. Comp. Laws § 6.508(D)(3) because Garcia "failed to show good cause for failure to raise the new issues on appeal, and actual prejudice for the alleged irregularities that support the claim for relief." *People v. Garcia*, No. 01011952-03 (Wayne Cnty. Cir. Ct. April 28, 2006). Pursuant to section 6.508(D), the Michigan Court of Appeals and the Michigan Supreme Court denied Garcia's applications for leave to appeal. *People v. Garcia*, No. 270439 (Mich. Ct. App. Nov. 28, 2006) (unpublished); *People v. Garcia*, 477 Mich. 1112 (2007).

A habeas petitioner procedurally defaults a claim if: "' (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.'" *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (quoting *Tolliver v. Sheets*, 594 F.3d 900, 928 n.11 (6th Cir. 2010)).

The circumstances surrounding Garcia's ineffective-assistance claim satisfy each element of the procedural-default test. First, Garcia failed to comply with Mich. Comp. Laws § 6.508(D)(3). Second, the Michigan courts enforced the rule, with the Wayne County Circuit Court providing a

thorough explanation of section 6.508(D)(3)'s application. Third, "[i]t is well-established in this circuit that the procedural bar set forth in Rule 6.508(d) constitutes an adequate and independent ground on which the Michigan Supreme Court may rely in foreclosing review of federal claims." *Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005). Finally, Garcia never attempted to show cause for his failure to raise the claim on direct appeal. Instead of arguing cause in the brief that he submitted to this Court, Garcia alleged that he brought the claim properly on direct appeal; however, in his memorandum in support of his habeas petition, he acknowledged that he did not bring the claim on direct appeal. Garcia procedurally defaulted on this claim.

For the above reasons, the judgment denying habeas corpus relief is AFFIRMED.