**Holland HARDAWAY, Petitioner-Appellant,**

v.

**Sharon BURT, Warden, Respondent-Appellee.**

**No. 16-1666**

United States Court of Appeals, Sixth Circuit.

Filed January 18, 2017

## ORDER

Holland Hardaway, a Michigan prisoner proceeding pro se, filed a notice of appeal from the district court's judgment denying his 28 U.S.C. § 2254 habeas corpus petition. Hardaway has now filed an applica-

tion for a certificate of appealability (COA). *See* Fed. R. App. P. 22(b).

In 1994, a Michigan jury convicted Hardaway of second-degree murder in violation of Michigan Compiled Laws § 750.317, and possession of a firearm during the commission of a felony in violation of Michigan Compiled Laws § 750.227b(1). *See People v. Hardaway*, No. 304814, 2013 WL 132710 (Mich. Ct. App. Jan. 10, 2013). He pleaded guilty to being a fourth offense habitual offender under Michigan Compiled Laws § 769.12. These convictions arose out of the shooting death of Norman Spruiel, an undercover Detroit police officer. *Id.* Hardaway was originally charged with open murder, assault with intent to commit murder, and one count of felony firearm, but he was acquitted of the assault charge.

The trial court sentenced Hardaway to forty to eighty years in prison for the second-degree murder conviction and a consecutive sentence of five years for the felony-firearm conviction. His appeal, filed through counsel, was dismissed as untimely. *People v. Hardaway*, No. 177099 (Mich. Ct. App. Aug. 18, 1995) (unpublished). His motion for a delayed application for leave to appeal was also denied, *People v. Hardaway*, No. 202045 (Mich. Ct. App. Sept. 25, 1997) (unpublished), and the Michigan Supreme Court denied leave to appeal. *People v. Hardaway*, 459 Mich. 876, 585 N.W.2d 303 (1998) (table). In December 1998, Hardaway filed a motion for relief from judgment, which was denied, and his appeal was denied for lack of merit. *People v. Hardaway*, No. 222000 (Mich. Ct. App. Mar. 30, 2000) (unpublished). The state supreme court denied leave to appeal. *People v. Hardaway*, 463 Mich. 934, 622 N.W.2d 64 (2000) (table).

On January 17, 2001, Hardaway filed his first habeas petition. In March 2002, the district court dismissed the petition as

time-barred. This court denied a COA, *Hardaway v. Robinson*, No. 02–1415 (6th Cir Oct. 16, 2002) (unpublished order), and the Supreme Court denied certiorari. In June 2004, Hardaway filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b). In granting the motion, the district court determined that it had miscalculated the date that Hardaway's convictions became final, reinstated the habeas petition as timely filed, and ordered the warden to respond. In January 2008, the district court denied all of Hardaway's claims on the merits.

In a published decision, this court reversed and remanded with instructions that the district court grant a conditional writ directing the state to afford Hardaway a direct appeal. *Hardaway v. Robinson*, 655 F.3d 445 (6th Cir. 2011) (amended order). The court determined that Hardaway was prejudiced by his appellate counsel's deficient performance because his counsel's failure to file an appellate brief rendered a direct appeal "entirely nonexistent," and Michigan's post-conviction proceedings were not an adequate substitute for a direct appeal of right. *Id.* at 449. Upon remand, the state court appointed counsel, provided Hardaway an appeal of right, and affirmed his convictions and sentence. *Hardaway*, 2013 WL 132710, at *14.

Hardaway then filed a second federal habeas corpus petition, raising the following claims: 1) ineffective assistance of trial and appellate counsel; 2) judicial bias; 3) violation of his Sixth Amendment right to confront witnesses and present a defense; 4) faulty jury instructions on intent to murder and coercive supplemental instructions to the jury; 5) prosecutorial misconduct; 6) withholding of exculpatory material; and 7) denial of a speedy and meaningful appeal. The district court denied the petition and denied a COA.

With one exception, Hardaway recounts all of the above arguments in his request for a COA. Because Hardaway fails to raise a challenge to the prosecution's comments about his girlfriend's arrest, he has abandoned this argument and it will not be addressed. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000).

A COA may issue when an "applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, a petitioner must demonstrate "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Id.* at 342, 123 S.Ct. 1029. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

As discussed herein, the district court concluded that some of Hardaway's claims were procedurally defaulted. Procedural default occurs when a petitioner fails to comply with a regularly enforced state court procedural rule that is an adequate and independent ground to bar review of a federal constitutional claim. *Hartman v. Bagley*, 492 F.3d 347, 357 (6th Cir. 2007); *Maupin v. Smith*, 785 F.2d 135, 138 (6th

Cir. 1986). A petitioner "can overcome a procedural default by showing (a) cause for the default and (b) actual prejudice from it." *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

This court previously summarized the relevant facts in this case:

> Hardaway shot and killed Norman Spruiel, a Detroit police officer, on October 2, 1993. Hardaway's defense was that he did not know Spruiel was a police officer, and that he returned fire in self-defense. Officer Spruiel and his partner had been working undercover, investigating a murder near a body shop where Hardaway was employed. Believing the two men were about to rob the repair shop, Hardaway went home, retrieved a rifle, and returned to the shop. Shots were fired, and Officer Spruiel was fatally wounded. Both sides claimed the other shot first.

*Hardaway*, 655 F.3d at 446. Officer Clifton Counts, Spruiel's partner who was present at the shooting, testified that prior to shots being fired, he had revealed his badge to Hardaway's cousin and the owner of the body shop. *Hardaway*, 2013 WL 132710, at *1. Counts also testified that he heard Hardaway say "[F]ucking police," after he fired shots in Spruiel's direction. *Id.*

### Ineffective Assistance of Counsel Claims

 Ineffective-assistance claims are reviewed under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* requires a defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. *Id.* at 687, 104 S.Ct. 2052. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exer-

cise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. 2052. In habeas review, the question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

 Hardaway first argues that his trial counsel was ineffective for failure to timely disclose counsel's friendship with the victim. Mid-trial, counsel stated in court that he had known Spruiel, played softball with him, and had roller-skated with him. The state appellate court rejected this ineffective-assistance-of-counsel claim, stating that Hardaway had presented "nothing beyond his bald assertion" that counsel failed to mention this acquaintance prior to trial. *Hardaway*, 2013 WL 132710, at *3. The state court added that, in any event, counsel had "vigorously contested the prosecutor's case and pursued [Hardaway's] self-defense theory throughout [the] trial," resulting in a second-degree murder conviction "despite considerable evidence" that supported premeditation and a first-degree murder conviction. *Id.* The district court emphasized that an "actual conflict of interest" meant a "conflict that affected counsel's performance—as opposed to a mere theoretical division of loyalties," citing *Mickens v. Taylor*, 535 U.S. 162, 171, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), and provided several examples of counsel's zealous representation.

Hardaway presented no evidence to support his bare allegation that counsel's association with Spruiel was a conflict or that "an actual conflict of interest adversely affected his lawyer's performance." *Strick-*

*land,* 466 U.S. at 692, 104 S.Ct. 2052 (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). The state appellate court provided sufficient reasons for finding that counsel met the *Strickland* deferential standard of representing Hardaway with reasonable professional judgment.

■ Hardaway next argues that his counsel was ineffective for failing to further investigate and introduce evidence to refute the medical examiner's testimony that Spruiel was shot in the back, which was central to Hardaway's self-defense theory. The parties stipulated to information in a surgeon's report indicating that a bullet entered Spruiel's right side under the armpit, and that Spruiel suffered another gunshot wound to the left flank. On appeal, the state court determined that, because this stipulation was presented to the jury and because the jury heard his counsel's closing argument that this evidence conflicted with the medical examiner's opinion that Spruiel was shot in the back, counsel's performance was not deficient and did not prejudice the case when he failed to call the surgeon to testify. *Hardaway,* 2013 WL 132710, at *3–4. No jurist of reason would disagree with this conclusion. Likewise, counsel did not prejudice Hardaway by failing to investigate notes taken by another officer, Sergeant Davis, which were based on the same medical records.

The district court also concluded, in light of the conflicting evidence already presented for the jury's consideration, that the outcome of Hardaway's trial would not have been different if either the surgeon or Sergeant Davis had testified. In addition, Hardaway failed to show that Spruiel was wearing a bullet-proof vest or jacket at the time of the shooting, so counsel could not have presented reliable laboratory evidence that no bullet struck his jacket in the back, as Hardaway argues. Based on these facts, reasonable jurists would conclude that counsel satisfied *Strickland's* deferential standard in failing to further investigate and present additional evidence regarding the location of Spruiel's gunshot wounds.

■ Hardaway also claims that counsel performed deficiently by failing to move for a directed verdict on the first-degree murder charge. Because Hardaway was acquitted of the charge, reasonable jurists would conclude that this failure by counsel did not prejudice his case, as noted by the district court. Moreover, the state appellate court found that the evidence would have been sufficient to convict Hardaway of the first-degree murder charge. *Hardaway,* 2013 WL 132710, at *5. Specifically, Hardaway had retrieved a rifle from his home before proceeding in a vehicle to the vicinity where Spruiel's car was parked, slowly drove past Spruiel twice before approaching him a third time, repeatedly fired shots at him, and finally declared, "[F]ucking police." *Id.* The state court concluded that the evidence was sufficient to show that Spruiel had an opportunity to reconsider his actions and thus that he "premediated and deliberated the killing," which would have established the requisite elements of first-degree murder under Michigan law. *Id.* (citing *People v. Abraham,* 234 Mich.App. 640, 599 N.W.2d 736, 745 (1999)). Based on this evidence, reasonable jurists would conclude that trial counsel met the *Strickland* deferential standard when he did not request a directed verdict on the first-degree murder charge.

### Judicial Bias Claims

Hardaway argues that, based on Michigan case law and criminal rules, he was entitled to a hearing on his claim of judicial bias. The state appellate court deter-

mined that Hardaway based his claim only on the trial judge's adverse evidentiary rulings and presented no evidence that the judge's decision arose out of favoritism or bias. *Hardaway*, 2013 WL 132710, at *6. The state court also rejected Hardaway's claim that the circuit court violated Michigan Criminal Rule 2.003(D)(3)(a)(i) by refusing to refer his motion to disqualify to the chief judge. *Id.* at *7.

 As the district court explained, the trial court's alleged procedural error was based on its interpretation of the state's criminal rules and thus is not cognizable on federal habeas review unless the state court's ruling was so fundamentally unfair that it amounted to a due process violation. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). As the district court also found, the ruling by the trial court did not reveal a "high degree of favoritism or antagonism as to make fair judgment impossible" for a jury. *See Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Therefore, jurists of reason could not conclude that this issue deserves encouragement to proceed further. *See Miller–El*, 537 U.S. at 327, 123 S.Ct. 1029.

## Right to Confront Witnesses and Present a Defense

 Hardaway argues that he was denied his right to confront witnesses under the Sixth Amendment when the trial court denied the admission of evidence regarding three instances of prior conduct by Counts and Spruiel involving the discharge of their firearms while on patrol. Hardaway relies on Michigan evidentiary rules and case law that permit evidence of a victim's character where self-defense is an issue. Applying Michigan Rules of Evidence 404 and 405, along with several Michigan cases, the state appellate court determined that none of the officers' prior acts were admissible because Hardaway had failed to prove that he was aware of the officers' past history at the time of the shooting and thus could not show that he was in fear while in the officers' presence at the time he fired at Spruiel. *Hardaway*, 2013 WL 132710, at *8-9. The district court upheld the state court's reasoning, adding that, even if the trial court erred in excluding this evidence, the remaining evidence was substantial enough to support a finding that Hardaway fired the first shot. In addition, had the prior incidents been introduced, the prosecutor could have shown that, in all three incidents, investigations cleared Spruiel and Counts of all wrongdoing.

As explained above, such claims based on evidentiary rulings under state law are not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67–68, 112 S.Ct. 475; *Moreland*, 699 F.3d at 923. Moreover, based on the state court's findings and the district court's reasons, Hardaway failed to show that the exclusion of the evidence regarding the officers' three prior shooting incidents was so fundamentally unfair that it amounted to a due process violation. *See, e.g., Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986) (a state may "exclude evidence through the application of evidentiary rules that … serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted").

The state court did not address Hardaway's claims that statements that Counts had made to investigating officers during initial interviews were wrongfully excluded and that the trial court should have permitted additional questioning about these interviews during cross-examination. The district court reviewed the trial transcript and determined that the jury was aware of

the interviews and that Counts was advised of his rights during one interview. The trial court also permitted Hardaway's counsel to question a police sergeant about police procedures when an officer is involved in a fatal shooting as in this case. This sergeant testified that, usually, an officer involved in a shooting is assigned an attorney who is present during the officer's questioning. Another police officer, who was in charge of the crime scene, testified and described in detail Counts's responses during the post-shooting interview. The officers' testimony revealed some slight inconsistencies, which the district court determined were sufficient for the jury to assess Counts's credibility based on his post-incident statements without additional cross-examination. For these reasons, jurists of reason could not disagree with the district court's resolution of this constitutional claim.

Jury Instructions

■■■ Hardaway challenges the jury instructions on second-degree murder. He argues that the jury was improperly instructed that it could presume intent from his use of a deadly weapon and, thus, the state was erroneously relieved of proving every element of the charge. Addressing this claim, the state appellate court noted that, at trial, Hardaway had indicated his satisfaction with the jury instructions, which constituted a waiver of this claim under state law. *Hardaway*, 2013 WL 132710, at *11. The district court properly determined that, as a result, Hardaway had procedurally defaulted the claim and had presented no cause for the default or prejudice to his case or evidence of actual innocence to excuse the default. *See Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). Therefore, jurists of reason

would not find it debatable whether the district court was correct in its procedural ruling on this claim. *Slack*, 529 U.S. at 484, 120 S.Ct. 1595.

■■■ Hardaway also challenges the trial court's supplemental jury instructions given after the jury twice notified the court that it was deadlocked on two of the charges. The trial court instructed the jury twice, over defense counsel's objection, that it should continue deliberations. The challenged instruction concluded with the judge's comment to the jury that "you [the jury] will deliberate for as long as necessary for you to reach [an] agreement." Hardaway presented this challenge in his first habeas petition, and this court rejected the claim, concluding that, "in light of the entire supplemental instruction, the Michigan trial court's determination that the *Allen*[1] charge was not coercive [was] not an unreasonable application of federal law." *Hardaway*, 655 F.3d at 447. Applying the Supreme Court's directives in *Allen* and in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965), this court noted that the trial court included "several remarks that were sufficient to mitigate any coercive effect the comment might have had." *Id.* at 448, 85 S.Ct. 1059.

Subsequently, the state appellate court determined that the challenged instruction did not suggest that the jury "had to reach some outcome within a specified period of time or fail its mission, or otherwise urge the jury to reach a verdict as part of its civic duty"—factors that the Michigan courts must consider when determining whether a jury instruction is coercive. *Hardaway*, 2013 WL 132710, at *10. The state court highlighted the trial court's assurance to the jury that it had "plenty of time" remaining to deliberate and that the

1. *See Allen v. United States*, 164 U.S. 492, 501–02, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

trial court's final instructions that closely tracked the state's standard deadlocked-jury instruction.

The district court relied on the rationale set forth in the state appellate court's decision and in this court's previous order and determined that the trial court's remarks were not coercive. In light of this court's prior findings and the state court's more recent observations on direct appeal, reasonable jurists would not debate that this claim does not deserve encouragement to proceed further.

Prosecutorial Misconduct

 Hardaway argues that the prosecutor denied him a fair trial by presenting arguments to the jury that were not supported by the facts, specifically that Spruiel was fleeing from Hardaway and thus was shot in the back. To be entitled to habeas relief on a prosecutorial misconduct claim, the petitioner must show that the prosecutor's conduct so infected the trial so as to render the conviction fundamentally unfair. *Parker v. Matthews*, 567 U.S. 37, 132 S.Ct. 2148, 2153, 183 L.Ed.2d 32 (2012); *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (citing *Donnelly v. De-Christoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

The state court noted that Hardaway failed to preserve this issue by objecting at trial to the prosecutor's arguments. *Hardaway*, 2013 WL 132710, at *12. Thus, based on Michigan's contemporaneous objection rule, the state appellate court reviewed the prosecutorial misconduct claim only for plain error. *Id.* The district court declined to review the claim, reiterating that the state court's finding that Hardaway failed to preserve his prosecutorial-misconduct claims and failed to demonstrate cause and prejudice for his default of this claim.

 The state court's application of plain error based on Hardaway's failure to comply with Michigan's contemporaneous objection rule was a procedural default of this claim, and the state's application of that rule was an adequate and independent ground for purposes of federal habeas review. *See Awkal v. Mitchell*, 613 F.3d 629, 648 (6th Cir. 2010). As the district court noted, Hardaway failed to present any cause for this procedural default, or prejudice supported by evidence of his actual innocence. Therefore, Hardaway has not overcome this procedural default, *see Hall*, 563 F.3d at 236, and reasonable jurists would not find it debatable that the district court was correct in this procedural ruling. *See Slack*, 529 U.S. at 484, 120 S.Ct. 1595.

 Hardaway also claims that the prosecutor improperly presented an unsupported motive for the shooting, introducing evidence of Hardaway's prior convictions and implying that he may have had a grudge with police from his prior dealings with law enforcement. As the district court noted, Hardaway's previous convictions were properly admitted, and it should be presumed that the jury followed the trial court's instructions that the prosecutor's statements and arguments were not evidence. *See Weeks v. Angelone*, 528 U.S. 225, 234, 120 S.Ct. 727, 145 L.Ed.2d 727 (2000). Thus, the prosecutor's statements did not prejudice Hardaway, and reasonable jurists would not debate the district court's determination that this prosecutorial misconduct claim does not deserve encouragement to proceed further.

Excessive Delay for the Appeal

Hardaway summarizes the lengthy procedural history of his case, blaming the delay of his direct appeal on attorney error, delays in mail delivery, and error and bias by the trial judge. Hardaway claims that his appeal was therefore a "meaning-

less ritual" because evidence was lost, witnesses were no longer available, and his funds for defending himself had been depleted.

■■■ Hardaway did not exhaust this claim in state court, but the district court could nevertheless address it on the merits because, as that court noted, exhaustion is not a jurisdictional requirement. *See* 28 U.S.C. § 2254(b)(2); *see also Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009). A due process analysis applies to such a claim, and this court has applied a modified version of speedy trial claims to claims that an undue delay in the appellate process was a violation of the defendant's constitutional rights. *See United States v. Gray*, 52 Fed.Appx. 650, 653–55 (6th Cir. 2002). However, the district court properly determined that the Supreme Court has not determined whether there is such a constitutional right, so habeas relief would not be available to Hardaway even if he could prove undue delay. *See Parker*, 132 S.Ct. at 2155. As a result, reasonable jurists would not debate that this claim does not deserve encouragement to proceed further.

### *Brady* Violation

Lastly, Hardaway argues that the prosecution violated his right to *Brady* [*v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] material when it failed to disclose statements by Counts during the initial investigation and that the district court would not have bound him over on the murder charge if these statements had been revealed. Specifically, Hardaway alleges that Counts initially stated to the investigating officers that he was the first to shoot after seeing Hardaway exit his car with a weapon, and that the remark of "fucking police" could have come from someone else at the scene. The state appellate court noted that Hardaway

did not contest his ability to obtain these statements, taken from police notes, and that, even if the statements had been admitted at the time, the overall remaining evidence was adequate to find probable cause and bind Hardaway over on the murder charge. *See Hardaway*, 2013 WL 132710, at *13.

■■■ In accordance with *Brady*, favorable material evidence must be disclosed to the defense. Evidence is material only if there is a "reasonable probability" that it would affect the outcome of the proceeding. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). As the district court noted, the prosecution met its burden under state law of establishing that a "person of prudence and caution could conscientiously entertain a reasonable belief" that Hardaway's shooting was premeditated so as to support the first-degree murder charge. Therefore, the state would not have altered its decision to bind Hardaway over on this charge and, in any event, Hardaway was acquitted on that charge. Based on these circumstances, Hardaway did not show that there was a reasonable probability that, had the evidence been disclosed at the preliminary hearing, it would have affected the outcome of the proceeding. *See id.* Therefore, this claim deserves no encouragement to proceed further.

Accordingly, the application for a COA is **DENIED**.